Philip A. Seplow, Esq.
Attorney AZ #004859
8808 North Central Ave. #278
Phoenix, AZ 85020
Tel: (602) 254-8817
PhilipSeplowLaw@gmail.com
barkerpas@gmail.com
Attorney for Chauncey Hollingberry

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| United States of America, Plaintiff, | Case CR-20-00673-PHX-MTL |
|---|---|
| vs. | MOTION FOR IMMEDIATE RELEASE (CHANGE OF PROBATION CONDITIONS) |
| Chauncey Hollingberry | |

COMES NOW THE Defendant, Chauncey Hollingberry, by and through undersigned counsel and requests that this Honorable Court Order Mr. Hollingberry's Immediate Release as new Circumstances have arisen, that when merged with the prior circumstances, calls for Chauncey Hollingberry's

immediate Release.  A Memorandum accompanies this request.

RESPECTFULLY submitted this 18th day of April, 2023.

s/ Philip A. Seplow
Attorney for Defendant
Chauncey Hollingberry

MEMORANDUM

**RECITALS:**

1. As noted in Document # 182, The Probationer, Chauncey Hollingberry, has been fearful that his current Probation officer would be, to use the Probationer's own words, attempting to set him up for failure.

2. Mr. Hollingberry believed this would occur by the reporting of false accusations to the Court.

3. Mr. Hollingberry maintained that this assertion was proven to be correct after the Dismissal, on the Government's

own Motion, of *Allegation A* of the *Petition For Warrant to Revoke Probation,* (Document #178), *infra.*

4) Now, under information and belief, the Government will be moving to Dismiss *Allegation B* of the Petition for Warrant, and, as will be shown *infra*, there is just reason and cause for that Dismissal.

5) The Probationer had been incarcerated for 26 months (over two years) before entering into a plea agreement that called for Probation.  While incarcerated, Chauncey's health deteriorated to a point where he had to be transported from *CoreCivic* to the courtroom by wheelchair and needed the assistance of a wheelchair for over a month after being released from custody.  Apparently, his body had been deprived of certain nutrients that he needed to retain and regain his strength and after a certain amount of time out of custody, his diet allowed him to partially recover to the point where he

no longer needed a wheelchair to be mobile.

      6) Mr. Hollingberry was successfully employed at *Goodwill Industries* until his unnecessary arrest on March 10, 2023. He is now fearful of becoming ill once again as he did during his incarceration at *CoreCivic,* and believes that same malady is beginning to affect him substantially. He is n*ow* (emphasis added) unemployed and believes that it will be difficult, as it is for all felons, to once again obtain a job in the normal work force.

Let's say he wanted to get his former job at *Goodwill Industries* back. When he is asked why he was so abruptly absent from work - if Chauncey tried to explain that he was arrested by the U. S. Marshals because his Probation Officer obtained an Arrest Warrant against him for allegedly violating his probation, the person in charge of rehiring, even if the rehiring agent believed Chauncey, would probably ask:

*How do we know that won't happen again?*

6) Chauncey Hollingberry does not and has not used illicit drugs and does not drink alcohol. His typical day before being arrested on *P.O.'s* Domschot's requested warrant consisted of going to work via the Phoenix bus system and staying at home. Chauncey is interested in acquiring paints, brushes, wax products, candle molds and other artistic tools and supplies for his proposed professional fine arts endeavors.

7) He forthrightly maintains that he is a journalist with *Sunshine Press* and seeks to disseminate important information exercising his First Amendment rights as guaranteed to all under the United States Constitution.

8) Mr. Hollingberry wanted to record his interactions with his *P.O.* and initially, the *FBI*. But neither the *P.O.* nor the *FBI* would allow that, so the Court allowed undersigned counsel to sit in on the discussions. This last sentence is critical to

the understanding of *Allegation C, infra.*

9) At the January 5, 2023 meeting, not only was a law enforcement agent from the State of Arizona in attendance, as well as Joshua Domschot, but at least three other *FBI* agents (or members of Federal Law Enforcement) were in the same small room with the Defendant and undersigned counsel. The Probationer felt very intimidated as a result of the multiple law enforcement personnel crowded inro the room.

**ARGUMENT WHY THE COURT SHOULD FREE CHAUNCEY FROM HIS PRESENT INCARCERATION**

There were three (3) Allegations proffered in the Petition for Warrant. Presumably, when this case proceeds to the Revocation Hearing there will only be one.

***ALLEGATION A***

As noted, *supra*, the Government, on its own motion moved to have the Court dismiss *Allegation A*, which the Court did. The import of this was either the *P.O*

maliciously made it appear that the Probationer intentionally missed an appointment, or the *P.O.* acted in reckless disregard of the truth.  Normally that misstep might be termed a negligent act, but when the situation calls for the disruption of the Probationer's life and te denial of his liberty is at stake, the absence of care is not simply an "excuse me" moment.  If it was merely an "excuse me" moment, then the *P.O.* would have tried to remedy the situation immediately by asking the Court to release Mr. Hollingberry, which the *P.O.* did not do and up to this writing has not done.

In regard to *Allegation A*, the simple fact is that the meeting initially scheduled for December 14, 2022, at 10:00 AM was mutually moved to a date in January when the Probationer, his mother, his counsel and several members of law enforcement met at the Probation Office at the

Sandra Day O'Connor Courthouse. *See*, the emails that went back and forth between undersigned counsel and the *AUSA,* of which the *P.O.* was copied, described in Doc. # 182.

As an aside, on the day that Chauncey appeared at the Probation Office and was arrested (March 10, 2023), his mother, Leeza Cook, appeared with her son and when asked to speak with her son, was told that she could do so momentarily (not the exact words) and was not allowed to speak with her son as he was arrested by approximately four law enforcement personal on the Warrant that should not have been applied for. As a citizen, she felt that she was deliberately lied to by officers of the Court.

**ALLEGATION B**

As noted, *supra*, the Government will be moving to Dismiss *Allegation B* of the Petition for Warrant, and, as will be shown *infra*, there is just reason and cause for the

Dismissal of *Allegation B.*

The *P.O.* is well aware of the Government's intention to dismiss Allegation B. But even if the Government changes its mind, when one looks at the Reporter's Transcript of March 22, 2023, it becomes abundantly clear that the Court will dismiss that allegation on its own.

The Issue for Allegation B was whether Mr. Hollingberry was utilizing any social networking forums offering an interactive, user-submitted network of friends, personal profiles, blogs, chat rooms or other environment which allows for interaction with others without prior written permission from the probation officer.

Even a liberal reading of the *P.O.'s* testimony in that regard shows no *interactive* use (emphasis added). It is proffered, however, by the Defense that when a person's liberty is at risk, the reading should not be simply liberal, but literal.

The most important issue in regard to *Allegation B*, is the fact that Chauncey, when attempting to create his own Website for business and/or news dissemination purposes, only accessed templates from social media, and he NEVER activated any device that would allow interaction with others.  He made certain that any connections with anything that would allow "chats" or interactive communication **were not** activated and he made sure that the "comments" feature availability was disabled which further prohibits interaction with others (*emphasis added*).

As this Court knows, and as evidenced by the 225 pages of Mr. Domschot's Probation Packet, anything that Mr. Hollingberry created or creates on his computer is monitored by the software for which Mr. Hollingberry pays thirty-five ($35.00) dollars a month.

Knowing in advance of the Revocation Hearing of the additional dismissal of *Allegation B*, the argument that the

*P.O.* maliciously endeavored to incarcerate the Probationer because the Probationer may have irritated him, grows stronger. Knowing that there is a strong probability that *Allegation B* will be scrapped, Probation Officer Domschot has still not petitioned the Court for the Probationer's release. Again, the import of this is either the *P.O.* acted maliciously or in reckless disregard of the truth.

Liberty is not a concept nor a right with which the United States Constitution trifles. *Due Process* cannot be honored when the initiating document (Doc. # 178) is as flawed as it is in this case (two out the three allegations being dismissed by the Government).

*Allegation C* is derivative of *Allegation A*. At the scheduled January 5th meeting at the Probation office with Mr. Domschot, undersigned counsel, Mr. Hollingberry and the myriad of law enforcement officials who populated the meeting

room, the Probationer did not remember passwords and user names. He had stored this information on his phone and the phone was not available for use at that time. The reason that information was not available was because Chauncey didn't have his phone anymore. The phone number that was assigned and associated with the phone he owned when he was freely using the internet (before his arrest for the substantive case), was no longer in his possession. His phone number from before his arrest in 2020 was assigned to a new user by the phone company. Without his phone and without his old number that was associated with said phone, there was no way in the world that he could have accessed any of his past internet workings, because the applications would not open until it recognized Chauncey's then phone number from his phone (which he did not have). Without the dell phone and assigned telephone number, the app at issue

could would text Chauncey a code which he would send back to *Facebook* or *YouTube*. He did not have that phone number anymore as of May of 2020. Mr. Hollingberry believes that said phone number was cancelled as far back as the year 2020.

Further, the government officials told the Probationer they would seek a Court order to have whatever social media servers the Probationer used basically wipe out (extinguish) all of his connections thereto. There was no formal objection raised against that governmental strategy at that time, and the Defense waited patiently to get a copy of that requested Order which never came.

*P.O.* Domschot admitted that if Chauncey did not have the phone number, Chauncey could not get into whatever account they were looking for. See pages 37, lines 11-25, and page 38, lines 1-6.

There has been no communication (real or attempted) at all with *Victim K* and Chauncey has no intent of to contact her in any way in the future (which would be a knowing violation of his conditions).  Chauncey has asked his *P.O.* to make some reasonable amendments to his Conditions of Probation such as removing the "no contact" restrictions that include people who are not victims, the mental health order since he has been cleared by at least three different health care professionals or agencies of needing psychological counseling.

Finally, even if the Court finds that Mr. Hollingberry in some manner violated *Allegation C*, because Mr. Hollingberry as of this writing has already served almost 40 days in custody, and the fact that he served two years and 2 months prior to imposition of probation, it would be unreasonable to incarcerate

Chauncey any further especially in light of losing his job and his health concerns (*supra*).

WHEREFORE it is respectfully respected this Court release Mr. Hollingberry from confinement and correct this depravation of liberty.

RESPECTFULLY SUBMITTED April 18, 2023.

/s/ Philip A. Seplow
Attorney for Chauncey Hollingberry.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Assistant United States Attorney
Glenn McCormick

Probation Officer
Joshua Domschot

The Defendant will be provided a copy of the above. /s/ Philip Seplow